

United States District Court
Southern District of Texas
FILED

JUN 2 8 2004

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOHN OCIE ROBERTS | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. B-04-002 |
| WELLS FARGO BANK, FORMERLY | § | |
| FIRST VALLEY BANK, FORMERLY | § | |
| RAYMONDVILLE STATE BANK, | § | |
| AND TOM FLEMING | § | |

## PLAINTIFF'S SUPPLEMENT IN REPLY OF DEFENDANT WELLS FARGO BANK TO PLAINTIFF'S RESPONSE TO DEFENDANT WELLS FARGO BANK'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, John Ocie Roberts and files this his Plaintiff's Supplement in Reply of Defendant Wells Fargo Bank to Plaintiff's Response to Defendant Wells Fargo Bank's Motion for Summary Judgment and would show the Court the following:

### I.
### INTRODUCTION

1.01 Plaintiff received Defendant Wells Fargo's Reply with less ten (10) days of days to work on this supplement.

1.02 Plaintiff incorporates by reference all live pleadings, responses, replies and exhibits in this pleadings as if they were all copied herein.

Also, Plaintiff incorporates by reference the responses replies, and all live pleadings to all Defendants into the documents. It is Plaintiff's intent to have the Court read all that he has proffered to be read as one unit, one complementing the others for a common goal and in the interest of justice.

## II.

2.01 Defendant Wells Fargo reiterates its basis for their motion for summary judgment being res judicata or claim preclusion under Texas law.  It is most unfortunate that Defendant has not captured the matter relevant to the various issues.

2.011 Rule 8 of the Federal Rules of Civil Procedure requires that res judicata be affirmatively plead.  When a Defendant moves for summary judgment on an affirmative defense.  The burden is on Defendants to establish all of the elements as a matter of law.  (Wagner v. Texas A. & M., 939 f. Supp. 1297 (S.D. Tex-1996) No where in there a final judgment which litigated any issue other than the $50,000.00.

2.012 Plaintiff asked the trial Court to have the Bank be shown where and when Plaintiff paid the Bank $50,000.00 but the trial Court said, "No." Impliedly, the trial Court said to Plaintiff, you can not do anything the Bank and whoever was in concert with the bank.  The Bank then kept the $50,000.00 extra, and now another Bank, who more than likely never put in a penny into the deal is now allegedly keeping the property.  The new Defendant Bank bought off all the notes of the original Bank.

2.013 Defendant's motion for summary judgment has quoted some case numbers, but has stated no specific issues to a jury, or findings of fact of a Court.  Defendant expects this Court to surmise, that if there is a cause number, there must been a issue somewhere on the homestead issue.

2.02 The homestead issue: The most significant problem Plaintiff was forced with was the Defendant Bank's failure to locate its records.  The initial real estate note was lost; as unusual as it may seem, but true.

Therefore, as best as can be described by Plaintiff, the only thing left was an oral contract.

2.03 As may be seen, the real estate note was signed on October 1, 1990. As may be seen, the designation as shown by Defendant's exhibits (Exhibit A copy of Defendant's exhibit and as shown by Defendant's exhibits is incorporated by reference as if fully copied herein.) The designation of homestead was signed, according to the notary public, October 5, 1990. Therefore, one can not say the Defendant Bank relied on the designation of homestead if there was none when the loan was made.

2.04 The bank has a legal duty to follow the Texas Property Code on foreclosures. The Defendant Bank never did follow the deed of trust agreement either.

2.05 In that Plaintiff decided to begin his homestead on one of the properties, said property became his homestead. The Constitution of the State of Texas allows for foreclosure but not executions on homestead.

2.06 Even Defendant Fleming know that (See Exhibit B the original of the hearing or motion for continuance and hearing on application for injunctive relief, case No. 2003-12-5738-A page 5l. 19-22 and is incorporated by reference as if fully copied herein.) As he cogently stated on page 5, lines 19-22, "of course, anybody who's been around more than 15 minutes in the practice of law knows the sheriff doesn't handle deeds of trusts and foreclosures."

2.07 However, that is exactly what Defendant has one on the homestead. Defendants did in directly what no one is to do directly. The sheriff executed on a foreclosure and executed on a homestead.

That is unequal protection and the Constitution of the United States of America does not allow it.

2.08 Defendant Bank has directly participated in that it is quit claiming to a taxing unit for a foreclosure that was allegedly done to one of Plaintiff's properties.

2.09 The Bank is having the Sheriff violate Texas Civil Practice and Remedies

Code §34.042 in that it is having the Sheriff execute all properties together when the statutes requires they be sold separately.

2.10 Also, §34.047 requires payment for the sale of properties and also §34.0445. Such has not been done.

2.11 The issue of homestead did not come into play until the execution came to pass. Up to then, there has never been any litigation of any type that considered would have considered this issue.

2.12 Defendant Bank speaks of bankruptcy as it were illegal. It is not illegal therefore and the mere fact that Plaintiff went through some bankruptcies does not give Defendant Bank to have Plaintiff's property seized pursuant to a writ of execution.

2.13 Res judicata requires proof of the following elements: (1) a prior final judgment on the merits by a Court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. (Lewis v. Guerrero, 978 S.W. 2d 689, Tex. Civ. App.-Corpus Christi, 1998).

2.14 The only issue was the $50,000.00 that could not be litigated as litigated in the first action. (The Defendants have continually left out the Response to Defendant's motion for summary judgment. (Exhibit C is a true and correct copy of the responses to Defendants' motions for summary judgment and the affidavits, and are incorporated by reference as if fully copied herein.)

2.15 However, the case at bar is not the issue of whether Plaintiff paid or not pay the $50,000.00; the issue here is did Defendants violate any of Plaintiff's constitutional rights when they took that $50,000.00 and did not apply it to his loan account. In other words, did Defendants go through a fair trial, with the motion of substantial justice and fair play?

2.16  If most of the events which give rise to a cause of action did not occur until

after the 1997 case, how could it be res judicata. The manner the sheriff and judgment act is ministerial not discretionary. How can Plaintiff comprehend that he should have added the issue of a judge going into another judge's Court and undo the elected judges orders?

3.01 Plaintiff objects to the quitclaim deed in that the signatory shows no authority to have signed such document.

Wherefore, Plaintiff prays that Defendants' motions for summary judgment be denied.

Plaintiff prays for any other relief, at law on in equity for which he is entitled to receive.

Respectfully submitted,

John Ocie Roberts
P. O. Box 1167
La Feria, Texas 78559

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document and has had been hand delivered on this the 25 day of JUNE, 2004 to the opposing counsel.


John Ocie Roberts

27464

vol 1325 page 222

OFFICIAL RECORDS

THE STATE OF TEXAS  §

COUNTY OF WILLACY  §     KNOW ALL MEN BY THESE PRESENTS:

HOMESTEAD DESIGNATION

That we, JOHN ROBERTS and THELMA ROBERTS, husband and wife, of the County of Willacy, and the State of Texas, do hereby, under and by virtue of the constitution and laws of the State of Texas in such cases made and provided designate and set apart as our homestead the following described land situated in Willacy County, Texas, to-wit:

> A tract 100 feet by 200 feet out of Lot Number 12, Section Number 47, Gulf Coast Irrigation Company Subdivision, and described by metes and bounds as follows, to-wit:
> BEGINNING at a point on the west line of said Lot 12, Section 47 of the Gulf Coast Irrigation Company Subdivision, which point is 425 feet South of the Northwest corner of said Lot 12;
> THENCE East and parallel with the North line of said Lot 12, a distance of 200 feet to a point for the Northeast corner of this tract;
> THENCE South and parallel with the west line of said Lot 12, a distance of 100 feet to a point for the Southeast corner of this tract;
> THENCE West and parallel with the north line of said Lot 12, a distance of 200 feet to a point in the West line of said Lot 12, such point being the Southwest corner of this tract;
> THENCE North with and along the west line of said Lot 12, a distance of 100 feet to the place of beginning of this tract, this tract containing 0.459 acres of land, more or less.

This designation of homestead is made for the purpose of inducing the Raymondville State Bank to make a loan to John Roberts on other land owned by me in Cameron County, Texas, more particularly described as:

> TRACT 1: The West six and 22/100 (W. 6.22) acres of the East Twenty-one and 224/1000 (E. 21.224) acres of Block One (1), in Orange Grove Park Subdivision, La Feria Grant, according to the map or plat of said subdivision recorded in Volume 4, Page 11, of the Map Records of Cameron County, Texas, and further described as follows:
>
> COMMENCING at a point in the North line of U.S. Highway "83" Business and the south line of the Missouri-Pacific Railway right of way, said point being the Northeast corner of Block 1, ORANGE GROVE PARK SUBDIVISION, as shown on map thereof, recorded in Volume 4, Page 11, of the Map Records, Cameron County, Texas;
> THENCE, along the north line of said U.S. Highway "83" with the South line of the Missouri-Pacific right of way, and the north line of said Block 1, South 71° 31' West, a distance of 585.78 feet to the point of beginning of the parcel herein described;
> THENCE, Parallel with the east line of said Block 1, South 01° 27' East, a distance of 62.75 feet to a point in the South right of way line of said Business "83", and continuing, South 01° 27' East, a distance of 1014.98 feet, for a total distance of 1077.73 feet to a point in the south line of said Block 1, lying on the approximate south bank of a drain ditch;
> THENCE, along the south line of said Block 1, South 89° 00' West, a distance of 261.37 feet to a point;

WFBank's

EXHIBIT NO. "1"

Exh A

vo. **1325** ᵗᵒᵗ **223**

THENCE, parallel with the east line of said Block One (1), North 01° 27' West, a distance of 932.85 feet to a point in the south line of said Business "83" right of way, and continuing, North 01° 27' West, a distance of 62.75 feet for a total distance of 995.60 feet to a point in the North line of said Block 1, being the north line of said Highway "83" right of way, and the South line of the Missouri Pacific Railroad right of way;

THENCE, along the north line of said block 1, with the north line of said Highway right of way and the South line of said Missouri Pacific right of way, North 71° 31' East, a distance of 273.35 feet to the POINT OF BEGINNING.

TRACT 2:  An 8,750.00 square foot tract of land, being the Easterly 50.0 feet of Lots Numbers Twelve (12), Thirteen (13), Fourteen (14) and the Easterly 50 feet of the Northerly 1/2 of Lot Number Eleven (11), Block Number Sixteen (16), THIRD ADDITION to the City of San Benito, according to the map recorded in Volume 2, Page 5, of the Map Records of Cameron County, Texas, more fully described as follows:

Having a point of beginning at the intersection of Texas State Highway Loop 448 and Westerly right of way line of Austin Street and THENCE South 30 degrees 43 minutes West, 175.0 feet, along with the Westerly right of way line of Austin Street to a point;

THENCE, North 59 degrees 17 minutes West, 50.0 feet to a point;

THENCE, North 30 degrees 43 minutes East, 175.0 feet to a point on the Southerly right of way line of said Texas State Highway Loop 448;

THENCE, along with the Southerly right of way line of Texas State Highway Loop 448, South 59 degrees 17 minutes East, 50.0 feet to the POINT OF BEGINNING of the tract herein described.

WITNESS OUR HANDS this the ___1st___ day of October, 1990.

_(JOHN ROBERTS)_

_(THELMA ROBERTS)_

THE STATE OF TEXAS     §

COUNTY OF WILLACY      §

This instrument was acknowledged before me on this the ___5th___ day of October, 1990, by John Roberts.

Notary Public in and for the State of Texas.
My Commission Expires: ___3/8/93___

Michelle Olivarez
Notary's Printed Name

1

```
 1                    REPORTER'S RECORD

 2                  VOLUME 1 OF 1 VOLUMES

 3           TRIAL COURT CAUSE NO. 2003-12-5738-A

 4    - - - - - - - - - - - - - - x
                                  :
 5    JOHN ROBERTS                :  IN THE DISTRICT COURT
                                  :
 6    VS.                         :  107TH JUDICIAL DISTRICT
                                  :
 7    WELLS FARGO BANK, FORMERLY  :
      FIRST VALLEY BANK, FORMERLY :
 8    RAYMONDVILLE STATE BANK,    :
      TOM FLEMING, DAN HUERTA     :
 9    AND ROLANDO OLVERA          :  CAMERON COUNTY, TEXAS
                                  :
10    - - - - - - - - - - - - - - x

11

12    **********************************************************

13          HEARING ON MOTION FOR CONTINUANCE
                           AND
14        HEARING ON APPLICATION FOR INJUNCTIVE RELIEF

15    **********************************************************

16        On the 8th day of December 2003, the following

17    proceedings came on to be heard in the above-entitled and

18    numbered cause before the Honorable Robert Barnes, Judge

19    Presiding, held in Brownsville, Cameron County, Texas.

20        Proceedings reported by machine shorthand.

21

22

23

24

25                   ORIGINAL
```

Exh B

2

1                    **A P P E A R A N C E S**

2      **TOM FLEMING**
       SBOT NO. 07133000
3      1650 Paredes Line Rd., Suite 102
       Brownsville, Texas 78521
4      Telephone:   (956) 982-4404
       Fax:   (956) 982-0943
5      ATTORNEY FOR DEFENDANTS

6
                              -  -  -
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

|  | CHRONOLOGICAL INDEX | |
|---|---|---|

1                CHRONOLOGICAL INDEX

2   DECEMBER 8, 2003                          PAGE

3   Case called for announcements......................4

4   **Hearing on Motion for Continuance**................4

5   Mr. Fleming's argument...........................4

6   Court's ruling...................................7

7   **Hearing on Application for Injunctive Relief**......7

8   **DEFENSE WITNESSES:**

9   **NAME**                   **DX   CX   RDX   RCX**

10   Huerta, Daniel         8

11   Huerta, Daniel        13
      (recalled)

12

13   Mr. Fleming's summation.........................17

14   Court's ruling.................................20

15   End proceedings................................21

16   Court Reporter's Certificate....................22

17                   - - -

18

19

20

21

22

23

24

25

4

## P R O C E E D I N G S

December 8, 2003

8:30 a.m.

THE COURT:  The first thing the court is going to take up is the Motion for Continuance filed on September 5th.

MR. FLEMING:  May I address that issue, Your Honor?

THE COURT:  I don't see anybody for the plaintiff.

MR. FLEMING:  I don't either, and if I might address that very issue.

THE COURT:  Go ahead.

MR. FLEMING:  I served opposing counsel with a copy of our original answer on the 4th day of December, served it by both fax and by certified mail. We have an indication that the fax went through.

Then he called me on the 5th of December, which was Friday, and asked me if I would agree to continue this matter, and I told him I could not because I needed to get it re-posted for the month of January -- or for the sheriff's office to get it re-posted for the month of January, and I would not and could not agree to a continuance.  And he stated that was fine, and he would see me on Monday.

```
 1            I do not have a copy of his motion for
 2   continuance, but I feel it's well not taken, simply
 3   because, number one, he waited until the 5th day of
 4   December to file it, and, number two, he asked for this
 5   hearing by virtue of asking for a temporary restraining
 6   order and a temporary injunction.
 7            If the court will have noted our answer,
 8   both our original answer and our first amended which I
 9   filed this morning, the only difference between the two
10   is that we have left out limitations as an affirmative
11   defense.  We have included it in our first amended.
12            And if you look at our answer, you'll see,
13   if you compare the exhibits to our answer to the
14   Application for Temporary Restraining order and Temporary
15   Injunction, you'll see there's a great deal of difference
16   between the two.
17            This was an execution by virtue of a writ
18   of execution issued by the Willacy County district clerk.
19            The plaintiff's petition alleges this is
20   some type of a foreclosure on a deed of trust by the
21   sheriff.  Of course, anybody who's been around more than
22   15 minutes in the practice of law knows the sheriff
23   doesn't handle deeds of trusts and foreclosures.
24            It's a verified pleading signed by Mr.
25   Roberts verifying it's true and correct.
```

1          Well, it's not true and correct, because
2     it sets out all kinds of things that have nothing to do
3     with the foreclosure on a writ of execution.
4          We believe that the pleading is
5     fictitious.  We believe it subjects both counsel and his
6     client to sanctions.
7          The TRO was issued on a $500 bond.  It
8     cost -- and it's in our pleading, and I have proof of
9     it -- it cost $976, or something like that, just to
10    publish the notifications required by law in order to
11    handle a writ of execution.
12         I ask the court -- and I'll introduce
13    this, but we paid from our firm the sum of $976.32 to the
14    Brownsville Herald for publication four times of the
15    notice required by the statutes and by the rules for this
16    foreclosure.
17         We would ask -- Ultimately, we will ask --
18    and I'm advising the court at the present time -- we will
19    be asking for forfeiture of the $500 bond as an offset
20    against that amount of money.
21         We would also ask the court to impose
22    sanctions, as I say, for fictitious and false pleadings
23    against both counsel and his client, Mr. John Roberts.
24         We're going to have to reset this thing --
25    We are going to ask the sheriff's office to reset this

7

1    for January for foreclosure, the first Tuesday in

2    January.

3                    Mr. Guajardo, as far as the motion for

4    continuance is concerned, states he is a prosecutor, and

5    he has to attend to Willacy County's criminal docket.

6    The 138th Judicial District Court has been scheduled to

7    be in Willacy County now for a year on this date.

8                    If Mr. Guajardo did not know that at the

9    time he asked for the hearing to be set on the 8th on

10   this injunction, then that's his problem.

11                   It appears to me he is asking for more

12   than he is entitled to.  When you go in and ask for an

13   injunction and get something set, I believe it's

14   incumbent upon you to be there and set aside all other

15   matters which you might have.

16                   We ask that the motion for continuance be

17   denied.

18                   THE COURT:  The motion for continuance

19   will be denied.

20                   MR. FLEMING:  Your Honor, we are present

21   and ready to go on the application for an injunction by

22   the plaintiff.

23                   THE COURT:  Go ahead, sir.

24                   MR. FLEMING:  We would call Danny Huerta.

25                   THE COURT:  Raise your right hand, please.

**DANIEL HUERTA,**

1

2    having been first duly sworn, testified as follows:

3    **DIRECT EXAMINATION**

4    BY MR. FLEMING:

5    Q.    Mr. Huerta, would you state your full name,

6    please.

7    A.    My name is Daniel Huerta.

8    Q.    How are you employed, sir?

9    A.    I'm employed by the Cameron County Sheriff's

10    Department.

11    Q.    In what capacity?

12    A.    As a deputy sheriff, assigned to the civil

13    process division.

14    Q.    All right.  Do you handle things like writs of

15    execution and foreclosures under those writs?

16    A.    Correct, sir.

17    Q.    Is that your primary function?

18    A.    Correct.

19    Q.    Mr. Huerta, did you receive from anyone a writ

20    of execution on certain properties belonging to John

21    Roberts?

22    A.    Yes, I did.

23    Q.    I show you what has been marked as Defendants'

24    Exhibit No. 1.  Is that copy of that writ of execution

25    you received?

9

1     A.   Yes.

2     Q.   What did you do with that writ once you

3 received it?

4     A.   We have procedures that we need to follow at

5 our department, policies.  We received the execution.  We

6 logged it into our computer system, and right after then

7 we executed on a property that your law office told us to

8 execute on.

9     Q.   Did you cause a publication to be made in a

10 newspaper of general circulation in Cameron County

11 concerning this foreclosure?

12     A.   Yes, sir, the Brownsville Herald, according to

13 the rules and statutes we have to follow.

14     Q.   Did you pay for the fees for that publication

15 or did counsel?

16     A.   Counsel is the one who paid for that fee.

17     Q.   All right.  Were you served with any type of

18 process through the district courts in Cameron County to

19 stop that foreclosure?

20     A.   Correct.  I was served with an injunction.

21     Q.   Did you stop the foreclosure?  Did you pull it?

22     A.   Yes, sir.

23     Q.   What's the latest date by which you can re-post

24 this foreclosure in January?

25     A.   For January, it has to be done this month

1    immediately for January, the first of January.

2        Q.    It would have to be 21 days prior to the

3    first --

4        A.    Twenty-one days prior that.

5        Q.    Mr. Huerta, after you became involved in this

6    matter -- Well, let me back up a little bit.  After you

7    received the writ of execution, did you find Mr. Roberts

8    to serve this on him?

9        A.    I had a hard time trying to get ahold of him.

10   I called his mobile, and I dealt with him before, and I

11   know it was him over the phone; and he told me he was out

12   of town.  He was out of town, and I never got to serve

13   him with the writ of execution.

14       Q.    All right.  But you attempted to?

15       A.    I attempted to a lot of times.

16       Q.    Did you leave him messages as to why you were

17   calling him?

18       A.    Yes.  And the person I spoke to over the phone

19   knew -- I told him to relay the message that I really

20   needed to talk him over the phone.

21       Q.    Did you tell him you had a writ of execution

22   for him?

23       A.    Correct.

24       Q.    And that you were going to seize three pieces

25   of property?

A.   Correct.

Q.   After you did that, did you receive any type of service of what is marked as a notice and demand from Mr. Roberts?

A.   Correct.

Q.   I show you what's been marked as Defendants' Exhibit No. 2.  Is that a copy of what you received from Mr. Roberts after you notified him or attempted to notify him of the writ of execution?

A.   Correct.  This is the same format.

MR. FLEMING:  Your Honor, we would ask that Defendants' Exhibits 1 and 2 be received.

THE COURT:  There being no objection, they will be received.

**(Defendants' Exhibits 1 and 2 admitted)**

MR. FLEMING:  Thank you, Mr. Huerta.

Your Honor, as an officer of the court, we have a number of documents we would like the court to consider in this matter, the first being Exhibit No. 3.

Defendants' Exhibit No. 3 is a copy of the receipt from the Brownsville Herald and a copy of our firm's general account tear-off of the check that was given to the Brownsville Herald, and I submit this to the court as an officer of the court, unless the court would like to swear me in to testify to it.  Otherwise, I will

12

ask the court to receive it as Exhibit No. 3.

THE COURT:  Without objection, it will be admitted.

(Defendants' Exhibit 3 admitted)

MR. FLEMING:  Also, Your Honor, the plaintiff's petition alleges this matter is before the Supreme Court of the State of Texas.

We would submit to the court a letter from the Supreme Court of Texas, Andrew Weber, clerk, to counsel in the matter involving Mr. Roberts and this bank, stating that today the Supreme Court of Texas denied the petition for review in the above styled case.

We would ask the court to accept this as Exhibit No. 4.

THE COURT:  Without objection, it will be accepted.

(Defendants' Exhibit 4 admitted)

MR. FLEMING:  Exhibit No. 5, Your Honor, is the order and opinion from the 13th Court of Appeals, affirming the opinion of the trial court, granting judgment against Mr. Roberts, and we would ask that Defendants' 5 be received.

THE COURT:  Without objection it will be received.

(Defendants' Exhibit 5 admitted)

1       MR. FLEMING:  Exhibit No. 6 is the

2  abstract of judgment filed on August 27 of 2002,

3  regarding the judgment, and we would ask the court to

4  receive that.

5       THE COURT:  Without objection, the court

6  will receive Defendants' Exhibit No. 6.

7          **(Defendants' Exhibit 6 admitted)**

8       MR. FLEMING:  Defendants' Exhibit No. 7,

9  Your Honor, is the -- Pardon me, Your Honor.  This is a

10 Notice of Sheriff's Sale.  Mr. Huerta, would you take the

11 stand again, if I might recall Mr. Huerta.

12       THE COURT:  All right.  I will advise Mr.

13 Huerta he is still under oath.

                **DANIEL HUERTA,**

   having been previously sworn, testified as follows:

            **DIRECT EXAMINATION (RESUMED)**

14 BY MR. FLEMING:

15     Q.   Mr. Huerta, I show you what has been marked as

16 Exhibit No. 7.  Do you recognize that document?

17     A.   Yes, sir.  This is the Notice of Sheriff's Sale

18 from our department.

19     Q.   Is that the notice that was posted for

20 foreclosure on the writ of execution?

21     A.   Correct.

22     Q.   Does it include a description of the three

pieces of property owned by Mr. Roberts which you were going to foreclose upon?

    A.   Correct.

        MR. FLEMING:  Your Honor, we would ask that Defendants' Exhibit No. 7 be received.

        THE COURT:  Without objection, Exhibit No. 7 will be received.

        **(Defendants' Exhibit 7 admitted)**

        MR. FLEMING:  Thank you, Mr. Huerta.

        Your Honor, I believe that -- These are matters which have to do with the merits of the case, because it indicates the frame of mind of the person with whom we are dealing and deals with our request for sanctions.

        After Mr. Huerta attempted to serve a writ of execution on Mr. Roberts, Defendants' Exhibit No. 8 was received by me, along with Exhibits 9 and 10, directly from Mr. Roberts.  We would ask that the court receive Defendants' Exhibit No. 8.

        THE COURT:  Without objection, Defendants' No. 8 will be received.

        **(Defendants' Exhibit 8 admitted)**

        MR. FLEMING:  Defendants' Exhibits 9 and 10 were received at the same time by me as Exhibit No. 8, and also are indicative of the type of individual with

15

1    whom we're dealing in support of our request for
2    sanctions, and we would ask that 9 and 10 be received.
3            THE COURT:  Nos. 9 and 10, without
4    objection, will be received.
5            (Defendants' Exhibits 9 and 10 admitted)
6            MR. FLEMING:  Thank you, Your Honor.  I
7    believe that completes our case.

            THE COURT:  Mr. Fleming, in looking at
Exhibit No. 8, I'm not quite sure I understand what Mr.
Roberts is attempting to do here.

            MR. FLEMING:  Mr. Roberts is a past master
at filing ridiculous pleadings, and he filed that claim
against both Mr. Huerta and I, attempting to claim what
he called a common-law lien against our hand signatures.

            I have already had a finding by the 197th
District Court that such a lien does not exist.  There
has been an order entered, and that order has been filed
with the county clerk's office last week, doing away with
those liens.

            But if you will notice, Exhibits 9 and 10
are also ridiculous.  Nine and 10 are attempts by Mr.
Roberts to file lien claims again his own property under
all kinds of -- two of the three properties that are
subject to foreclosure, under some type of a common-law
lien approved by the courts of Massachusetts, he claims.

1  Of course, we all know that has nothing to do with the

2  real estate in the State of Texas.

3            He has filed all kinds of pleadings.  If

4  the court will read the opinion by the 13th Court, you'll

5  find it's a memorandum opinion.  It's a memorandum

6  opinion because no one could figure out what facts he was

7  alleging in his pleadings before the 13th Court.

8            So the 13th Court, in an opinion by

9  Justice Hinojosa, if I might demonstrate to the court,

10  starts out its opinion by saying:  "As this is a

11  memorandum opinion, and the parties are familiar with the

12  facts, we will not recite them all here."

13            They couldn't recite them because nobody

14  knew what the heck he was alleging in his pleadings.  I

15  got a kick out of that.

16            But he alleged in the lawsuit in general,

17  Your Honor, just in order for you to understand the type

18  of person we're dealing with, he alleged in his lawsuit

19  against the bank that the bank had agreed to loan him

20  $100,000, but had not made that loan because they didn't

21  give him the cash, but rather credited his checking

22  account and, therefore, it was not a loan of cash.  And a

23  loan, without the transfer of cash in hand, is not a loan

24  and, therefore, he didn't owe the bank any money.

25            THE COURT:  Well, that's at least a unique

1  allegation.

2            MR. FLEMING:  Then he attempted to repay

3  the $100,000-plus loan by transferring and bringing into

4  the bank 100,000 Bolivian dollars, which had a total

5  value on the currency exchange of $38.50 at the time of

6  transfer, and then demanded that the note be marked off

7  or be charged off and given to him as paid because he had

8  in fact delivered $100,000 to the bank.

9            The trial court, of course -- We were

10 granted summary judgment; the 13th Court affirmed the

11 summary judgment, and the Supreme Court has denied the

12 petition for review.

13           We believe that his spurious

14 allegations --

15           THE COURT:  Where did his attorney come

16 into this?

17           MR. FLEMING:  He didn't have an attorney.

18 He's had various attorneys, none of whom stuck with him.

19 This attorney just appeared when we got the writ of

20 execution and Mr. Huerta served it and posted it and

21 attempted to fulfill it.

22           Mr. Guajardo just appeared out of Hidalgo

23 County.  I started to say out of nowhere, but he appeared

24 out of Hidalgo County.

25           THE COURT:  That's pretty much nowhere,

1  since that's where I come from also.

2             MR. FLEMING:  But he just -- I attempted

3  to -- I asked him if he had read the answer that I had

4  sent over to him on Thursday -- and this was Friday --

5  and he said he had not read it.

6             I asked him if he had read the exhibits

7  that were attached to the answer that indicated and

8  demonstrated and showed that this was a writ of execution

9  and not an execution on a deed of trust, and he said he

10  hadn't quite gotten around to that.

11             So I guess the only thing he got around to

12  was filing a motion for continuance.  I don't know, Your

13  Honor.

14             I have prepared an order for the court,

15  assuming he would be here as he said he would be here.

16  The court may have to make certain interlineations.

17             We've asked in that order and again we've

18  set out a forfeiture of the $500 bond directed to the

19  bank.

20             We've set out a blank for the court to

21  fill in if it chooses to assert sanctions or to issue

22  sanctions against anyone.  We left a blank for both the

23  amount and the name of the person.

24             THE COURT:  Do you have a suggestion?

25             MR. FLEMING:  Your Honor, I think in this

1    particular instance, counsel is guilty of fraudulent

2    pleadings, fictitious pleadings, as is his client,

3    because no lawyer knows -- every lawyer knows that the

4    sheriffs' departments don't handle deeds of trusts in

5    lien foreclosures.

6              Number two, he knew that both Rolando

7    Olvera and I had been involved as counsel for the bank

8    from the trial court to the supreme court by virtue of

9    the pleadings, if nothing else, and by virtue of the

10   opinion of the 13th Court, if nothing else, and by virtue

11   of the denial of the petition for review by the Supreme

12   Court, if nothing else.

13             Counsel chose to file a pleading which

14   makes no sense -- I know the court has reviewed it, and

15   it makes no sense -- and asked for a TRO ex parte, which

16   in my mind is wrong and subjects you to sanctions.

17             The old saying that we all used to laugh

18   at, "There's no parte like ex parte," was always a joke.

19   But some lawyers seem to think that's the way you are

20   supposed to practice law.

21             We would ask that sanctions be imposed

22   against both counsel and Mr. Roberts to the tune of at

23   least a thousand dollars.

24             THE COURT:  Let's fill that in for $5,000.

25             MR. FLEMING:  Against both, Your Honor?

1    THE COURT:  Yes.  And in the application

2 for injunctive relief, Mr. Roberts comes in and asks

3 apparently for injunctive relief against, not only the

4 bank, but against Counsel Tom Fleming, Mr. Dan Huerta,

5 and Counsel Rolando Olvera; and nowhere in the pleading

6 are there any facts set forth as to why Mr. Fleming, Mr.

7 Huerta and Mr. Olvera have damaged anybody.

8    I was really kind of hoping Mr. Roberts or

9 his attorney would show up and tell me where in the

10 pleadings they are asking for any damages against

11 anybody.  I don't see that.

12    The application for injunctive relief is

13 denied; sanctions in the amount of $5,000 will be granted

14 against both the attorney and his client, and the $500

15 bond will be forfeited as a setoff against the sanctions

16 judgment against the parties.

17    MR. FLEMING:  Your Honor, I believe I have

18 filled this out correctly.  I filled it out against John

19 Roberts and/or Raul Guajardo.

20    THE COURT:  I'm also -- Let's get off the

21 record for just a minute, Jack.

22    **(At the bench, off the record)**

23    THE COURT:  All costs will be entered

24 against the plaintiff and his attorney, jointly.  I don't

25 think you had that in your order.

21

```
 1                    MR. FLEMING:  No, I didn't, Your Honor.
 2                    THE COURT:  It's doubtful we'll get
 3       anything anyway.
 4                    MR. FLEMING:  I agree with you.  I just
 5       want to get that $500.
 6                    THE COURT:  That will help, won't it?
 7                    MR. FLEMING:  Yes, sir.  Thank you.  That
 8       completes our business.  May we be excused?
 9                    THE COURT:  Y'all may be excused.
10                         (End proceedings)
11                            -  -  -
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

22

1 THE STATE OF TEXAS:

2 COUNTY OF CAMERON:

3                CERTIFICATE OF COURT REPORTER

4       I, JOHN R. CORR, Official Court Reporter in and for

5 the District Courts of Cameron County, State of Texas, do

6 hereby certify that the above and foregoing contains a

7 true and correct transcription of all portions of

8 evidence and other proceedings requested in writing by

9 counsel for the parties to be included in this volume of

10 the Reporter's Record, in the above-entitled and numbered

11 cause, all of which occurred in open court or in chambers

12 and were reported by me.

13       I further certify that this Reporter's Record of the

14 proceedings truly and correctly reflects the exhibits, if

15 any, admitted into evidence, but upon request were not

16 included and attached as part of the record.

17       WITNESS MY OFFICIAL HAND on this the 6th day of

18 January 2004.

19

20

21       JOHN R. CORR, Texas CSR 663
         Expiration Date:  12/31/2004
22       Official Court Reporter
         Cameron County, Texas
23       974 East Harrison Street
         Brownsville, Texas 78520
24       (956) 544-0874

25

CERTIFIED COPY

IN THE DISTRICT COURT
FOR THE STATE OF TEXAS
WILLACY COUNTY, TEXAS

JOHN ROBERTS,                          §
                    Plaintiff,         §          CASE NO. 97-223
                                       §
vs.                                    §
                                       §
FIRST VALLEY BANK, Formerly,           §
RAYMONDVILLE STATE BANK,               §          138th JUDICIAL DISTRICT COURT
and Does 1 through 20,                 §
                    Defendants         §

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now, John Ocie Roberts, by and through his attorney, Bland Puente, and files this his

response in the above styled and numbered cause, to DEFENDANT'S MOTION FOR SUMMARY

JUDGMENT and for his grounds would show the Court the following:

I.

Plaintiff hereby incorporates by reference all live pleading in this case as are now in file with the

Clerk of the Court and Defendant, J. Rolando Olvera, Jr.'s, Motion For Summary Judgment. Plaintiff

hereby incorporates by reference his affidavits attached hereto. Also, incorporates by reference his latest

pleadings, his original pleadings and the sample of an application for a temporary restraining order that

was issued against Bank.

II.

Plaintiff hereby shows the court that Defendant, J. Rolando Olvera, Jr. has not met his burden in

showing the court the specific grounds for this motion. The requirements mandated by Rule 166a of the

Texas Rules of Civil Procedure are that the movant must show there are no genuine issues of fact and that

he is entitled to judgment as a matter of law. This type of motion is decided on facts. However,

Defendant has skirted around the facts that control this case. So much has he done this that he inserted



most of the facts under the section of Argument and Authorities in his motion. There he cited only one case,

(Renfroe v. Jones) and said case does not fit the fact pattern of the case at hand.

## III.

Plaintiff had attempted to borrow some money from First Valley Bank. (heretofore referred to as "Bank") Because there were some tracts of land involved as the collateral offered, Plaintiff and Bank agreed to a trustee for the deed of trustee.

A.      The said trustee was to have some duties, obligations, if certain events were to occur. Defendant was then placed as a substitute trustee.   Granted, Defendant is a duly licensed attorney in the State of Texas, however, while acting under the capacity of trustee and under the suspices of the Bank, he now has direct privity with the Bank. If Defendant is to perform his duties in an illegal way, he will be harming Plaintiff. Therefore, Plaintiff will have a cause of action against him directly.   This is either malfeasance or misfeasance, depending how one may view this scenerio.

B.      Defendant mentions Bankruptcy and that would be the sole reason for the Bank not to have foreclosed. Not so, there have been several temporary restraining orders on the Bank when it has attempted foreclosure. Why? Because when the various courts would see the problems involved, they would grant the temporary restraining order.

C.      Defendant enumerates eight (8) affirmative defenses, however, he does not state any facts to support such legal conclusions. If a motion for Summary Judgment is to be passed on facts, Defendant has not stated any facts which would support a Summary Judgment.

D.      Serving as a trustee in a deed of trust is not practicing law. Anyone may be appointed to serve as trustee. Therefore, Defendant is merely executing the duties of his office, which has no requirement to be an attorney. Therefore, Defendant does have a contract with the Bank or at least is performing in favor of the Bank.

CERTIFIED COPY

E.    This is the first time that Defendant, J. Rolando Olvera, Jr. has concretely dated certain facts which had been disputed by Defendants. On many occasions Defendant, J. Rolando Olvera Jr., offered Plaintiff certified copies of the original note. Ironically, now he states unequivocally that the note was never filed. Therefore, how could he be able to offer Plaintiff certified copies of the note when he can not find the original and he never filed the original note anywhere? This is fraud. He has made a statement, it was reasonable, Plaintiff made a change of position because he relied on said statement and continued to over pay on the note, and now he is being damaged. The damage is now he is endangered in losing two tracts of land when only part of the tracts of land were supposed to have been placed as collateral.

F.    Plaintiff has continually asked for an accounting. In the MOTION **FOR SUMMARY JUDGMENT** is the first time Plaintiff sees any type of numbers other than the alleged full amount of the note, which is supposed to be, $100,523.75.

Allegedly;  Coastal Banc was paid          $27,720.81

Raymondville State Bank was paid  $27,227.09

Total:      $54,947.90

Where is the balance:          $100,523.75
                             -  $ 54,947.89
                               $ 45,575.85

G.    The homestead description is totally incorrect. Plaintiff resides in the rural areas, the homestead designation is only for an urban type of homestead. Plaintiff was only following directions from the Bank as he was for everything else. Plaintiff has never received directly from the Bank any documentation showing what he executed. He was always promised. And now, Defendant, J. Rolando Olvera, Jr., is the agent attempting to enforce promises that were hollow from the beginning.

H.    Through fraud in the execution, Plaintiff was given certain documents to sign. Now, the Defendants are saying that those were for a loan. That loan never existed. They are hiding on a law that they claim that if an extension is signed, every fraud from the beginning is covered up. And Defendant, J. Rolando Olvera, Jr., is attempting to perpetuate that fraud on Plaintiff and Defendant claims that Plaintiff has no cause of action.

CERTIFIED COPY

I.      According to Plaintiff's calculations, he has finished paying all of his loans to the Bank. Since the Bank claims that there are no records of his paying, then the note is now paid. A note that the Bank can not find; an account that has disappeared. However, the agent, Defendant J. Rolando Olvera, states the Plaintiff should be estopped.

J.      Defendant. J. Rolando Olvera, claims no interest in Bank nor in the non-existing "note". Therefore, he may ignore all of the surrounding facts and have total and complete immunity because he is an attorney and he was never hired by Plaintiff.

### III.

The following is a list of the issues pending to be determined by a jury on a trial:

(1)    Is the note genuine? Plaintiff states "no"

(2)    Are Plaintiff's signatures genuine? Plaintiff states "no"

(3)    Did Plaintiff grant a 100% encumbrance on the collateral? Plaintiff states "no."

(4)    Is there a homestead problem? Plaintiff states "yes"

(5)    May an individual collaterize homestead and said homestead is waived? Texas Constitution forbids it.

(6)    Does the wife have to sign to mortgage homestead? Plaintiff states "yes"

(7)    Did wife sign to collaterize property? Plaintiff states "no"

(8)    Is the Bank required to keep records so that it can prove indebtedness? Plaintiff states "yes"

(9)    Did the Bank keep records? Plaintiff states - "he does not know" The Bank has refused to answer that question.

(10)   Should the courts force Plaintiff to pay on a fraudulent note? Plaintiff states "no"

### CAUSES OF ACTION

CERTIFIED COPY

Plaintiff has causes of action in fraud, breach of contract, breach of fiduciary duty, extortion and under the RI CO statutes.

### PRAYER

Plaintiff respectfully requests the court deny Defendant's **MOTION FOR SUMMARY JUDGMENT** in that there exist numerous fact issues for a trial of fact and such issues preclude as a matter of law Summary Judgment.

Wherefore, Plaintiff respectfully requests the court to enter in an Order denying the **MOTION FOR SUMMARY JUDGMENT MOTION** filed by Defendant, J. Rolando Olvera, **Jr.**

Respectfully Submitted,

**John Ocie Roberts**
1726 Commerce
Harlingen, Texas 78550

**CERTIFIED COPY**

## CERTIFICATE OF SERVICE

I hereby certify that I have mailed by return receipt requested, certified mail, U.S. Postal Service a true and correct copy of Plaintiff's Reply to Defendant's **Motion for Summary Judgment** on this the _2nd_ day of December 1999 to attorney for Defendant, J. Rolando Olvera, Jr., the Honorable Tom Fleming, 1650 Paredes Line Road, Suite 102, Brownsville, Texas 78521.

USCMRRR# _2 471 478 450_

_John Ocie Roberts_
John Ocie Roberts

Be it known that, John Roberts, personally appeared before me this the _2nd_ day of December 1999.

_Notary Public_
Notary Public In and For the State of Texas

JoANN C. GARCIA
Notary Public, State of Texas
My Commission Expires
August 25, 2003

**CERTIFIED COPY**

IN THE DISTRICT COURT
FOR THE STATE OF TEXAS
WILLACY COUNTY, TEXAS

JOHN ROBERTS, §
         Plaintiff, §     CASE NO. 97-223
    §
vs. §
    §
FIRST VALLEY BANK, Formerly, §
RAYMONDVILLE STATE BANK, §    138th JUDICIAL DISTRICT COURT
and Does 1 through 20, §
         Defendants §

State of Texas§
County of Willacy§

    Before me, personally appeared John Ocie Roberts, who under oath stated the following was true and correct, from his own personal knowledge:

    My name is John Ocie Roberts. I am the Plaintiff in the above styled and numbered case. I am over the age of 21, am competent to testify and have never been convicted of any crime.

    Attached to this affidavit are the following items which are true and correct copies of the instrument they purport to be to which I certify and authenticate:

(1)    copy of Defendant, J. Rolando Olvera Jr.'s, Motion for Summary Judgment
(2)    copy of my pleading
(3)    example of an application I filed against the Bank and the Bank was restrained from foreclosing on the tracts of land.
(4)    copies of court rulings that have instructed Defendant to show original documents to me; however, they have always refused to allow me to see the originals.

    Further, affiant saith naught.

                             _John Ocie Roberts_
                                John Ocie Roberts
                                1726 Commerce
                              Harlingen, Texas 78550

Sworn and subscribed o before me on this the _2nd_ day of _December_ 1999.

JoANN C. GARCIA
Notary Public, State of Texas
My Commission Expires
August 25, 2003

                                Notary Public In and For the State of Texas

**CERTIFIED COPY**

IN THE DISTRICT COURT
FOR THE STATE OF TEXAS
WILLACY COUNTY, TEXAS

| | | |
|---|---|---|
| JOHN ROBERTS, | § | CASE NO. 97-223 |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| FIRST VALLEY BANK, Formerly, | § | |
| RAYMONDVILLE STATE BANK, | § | 138th JUDICIAL DISTRICT COURT |
| and Does 1 through 20, | § | |
| Defendants | § | |

State of Texas §
County of Willacy §

Before me personally appeared John Ocie Roberts, who under oath stated the following was true and correct from his own personal knowledge:

My name is John Ocie Roberts. I am the Plaintiff in the above styled and numbered cause. I am over the age of 21, am competent to testify and have never been convicted of any crime.

When I went to the Bank, a Defendant herein, to ask for a loan, I was asked to sign several documents. I did sign some documents but I do not recall signing a note for over $100,000.00. I was told not to worry, I would get copies of all of them through the mail.

I explained the circumstances of how much interest I had on certain tracts of land. I also let them know about my homestead that I lived in a rural area. My wife was also a part owner of the land, yet the Bank claims all of it is collateralized.

I paid on the note until I knew I had finished paying for all of the loan. To my surprise, the bank official, now deceased, informed me that I owed for a large note. He had other notes, I could not understand.

I began to question what was the problem. The Bank then started foreclosing and then sought judicial intervention.

I would try to explain to Defendant, J. Rolando Olvera Jr., however, he has refused to even let me see the bank records on my payments, the actual documents I signed, and all he wants is foreclosure.

Mr. J. Rolando Olvera Jr. Still refuses to allow me to see the originals even though several judges have ordered him to produce the items.

I hereby state that I have read my response to DEFENDANT'S MOTION FOR SUMMARY JUDGMENT everything there is true and correct from my own personal knowledge.

Affiant, further saith naught.

**CERTIFIED COPY**

John Ocie Roberts
1726 Commerce
Harlingen, Texas 78550

Sworn and subscribed to before me on this the _2nd_ day of December, 1999.

Notary Public - In and For the State of Texas

JoANN C. GARCIA
Notary Public, State of Texas
My Commission Expires
**August 25, 2003**

A TRUE COPY OF THE ORIGINAL
I CERTIFY THIS _24th_ DAY OF
_June_, 20_04_

GILBERT LOZANO, DISTRICT CLERK
WILLACY COUNTY TEXAS
BY_____DEPUTY

CERTIFIED COPY

IN THE DISTRICT COURT
FOR THE STATE OF TEXAS
WILLACY COUNTY, TEXAS

JOHN ROBERTS,                          §
                    Plaintiff,         §        CASE NO. 97-223
                                       §
VS.                                    §
                                       §
FIRST VALLEY BANK, Formerly,           §
RAYMONDVILLE STATE BANK,               §        138th JUDICIAL DISTRICT COURT
and Does 1 through 20,                 §
                    Defendants         §

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION ( Second )
FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now, John Ocie Roberts,                              and files this his
response in the above styled and numbered cause, to **DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT** and for his grounds would show the Court the following:

I.

Plaintiff hereby incorporates by reference all live pleading in this case as are now in file with the
Clerk of the Court and Defendant, J. Rolando Olvera, Jr.'s, Motion For Summary Judgment Plaintiff
hereby incorporates by reference his affidavits attached hereto. Also, incorporates by reference his latest
pleadings, his original pleadings and the sample of an application for a temporary restraining order that
was issued against Bank

II.

Plaintiff hereby shows the court that Defendant, J. Rolando Olvera, Jr. has **not met his burden in**
showing the court the specific grounds for this motion. The requirements mandated **by** Rule 166a of the
Texas Rules of Civil Procedure are that the movant must show **there are no genuine issues** of fact and that
he is entitled to judgment as a matter of law. This type of motion is decided on facts. However,
Defendant has skirted around the facts that control this case. So much has he done t**his** that he inserted



CERTIFIED COPY

most of the facts under the section of Argument and Authorities in his motion. There he cited only one case,

(Renfroe v. Jones) and said case does not fit the fact pattern of the case at hand.

## III.

Plaintiff had attempted to borrow some money from First Valley Bank, (heretofore referred to as "Bank") Because there were some tracts of land involved as the collateral offered, Plaintiff and Bank agreed to a trustee for the deed of trustee.

A.      The said trustee was to have some duties, obligations, if certain events were to occur. Defendant was then placed as a substitute trustee. Granted, Defendant is a duly licensed attorney in the State of Texas, however, while acting under the capacity of trustee and under the auspices of the Bank, he now has direct privity with the Bank. If Defendant is to perform his duties in an illegal way, he will be harming Plaintiff. Therefore, Plaintiff will have a cause of action against him directly. This is either malfeasance or misfeasance, depending how one may view this scenerio.

B.      Defendant mentions Bankruptcy and that would be the sole reason for the Bank not to have foreclosed. Not so, there have been several temporary restraining orders on the Bank when it has attempted foreclosure. Why? Because when the various courts would see the problems involved, they would grant the temporary restraining order.

C.      Defendant enumerates eight (8) affirmative defenses, however, he does not state any facts to support such legal conclusions. If a motion for Summary Judgment is to be passed on facts, Defendant has not stated any facts which would support a Summary Judgment.

D.      Serving as a trustee in a deed of trust is not practicing law. Anyone may be appointed to serve as trustee. Therefore, Defendant is merely executing the duties of his office, which has no requirement to be an attorney. Therefore, Defendant does have a contract with the Bank or at least is performing in favor of the Bank.

CERTIFIED COPY

E.    This is the first time that Defendant, J. Rolando Olvera, Jr. has concretely dated certain facts which had been disputed by Defendants.  On many occasions Defendant J. Rolando Olvera Jr., offered Plaintiff certified copies of the original note.  Ironically, now he states unequivocally that the note was never filed.  Therefore, how could he be able to offer Plaintiff certified copies of the note when he can not find the original and he never filed the original note anywhere?  This is fraud. He has made a statement, it was reasonable. Plaintiff made a change of position because he relied on said statement and continued to over pay on the note, and now he is being damaged.  The damage is now he is endangered in losing two tracts of land when only part of the tracts of land were supposed to have been placed as collateral.

F.    Plaintiff has continually asked for an accounting.  In the MOTION FOR SUMMARY JUDGMENT is the first time Plaintiff sees any type of numbers other than the alleged full amount of the note, which is supposed to be. $100,523.75.

Allegedly:  Coastal Banc was paid          $27,720.81

Raymondville State Bank was paid   $27,227.09

Total:      $54,947.90

Where is the balance:                          $100,523.75
                                             -  $ 54,947.89
                                                $ 45,575.85

G    The homestead description is totally incorrect.  Plaintiff resides in the rural areas, the homestead designation is only for an urban type of  homestead.  Plaintiff was only following directions from the Bank as he was for everything else.  Plaintiff has never received directly from the Bank any documentation showing what he executed.  He was always promised.  And now, Defendant, J. Rolando Olvera, Jr., is the agent attempting to enforce promises that were hollow from the beginning.

H.    Through fraud in the execution.  Plaintiff was given certain documents to sign.  Now, the Defendants are saying that those were for a loan.  That loan never existed. They are hiding on a law that they claim that if an extension is signed, every fraud from the beginning is covered up.  And Defendant, J. Rolando Olvera, Jr., is attempting to perpetuate that fraud on Plaintiff and Defendant claims that Plaintiff has no cause of action.

I.      According to Plaintiff's calculations, he has finished paying all of his loans to the Bank. Since the Bank claims that there are no records of his paying, then the note is now paid. A note that the Bank can not find; an account that has disappeared. However, the agent, Defendant J. Rolando Olvera, states the Plaintiff should be estopped.

J.      Defendant, J. Rolando Olvera, claims no interest in Bank nor in the non-existing "note". Therefore, he may ignore all of the surrounding facts and have total and complete immunity because he is an attorney and he was never hired by Plaintiff.

### III.

The following is a list of the issues pending to be determined by a jury on a trial:

(1)    Is the note genuine? Plaintiff states "no"

(2)    Are Plaintiff's signatures genuine? Plaintiff states "no"

(3)    Did Plaintiff grant a 100% encumbrance on the collateral? Plaintiff states "no."

(4)    Is there a homestead problem? Plaintiff states "yes"

(5)    May an individual collaterize homestead and said homestead is waived? Texas Constitution forbids it.

(6)    Does the wife have to sign to mortgage homestead? Plaintiff states "yes"

(7)    Did wife sign to collaterize property? Plaintiff states "no"

(8)    Is the Bank required to keep records so that it can prove indebtedness? Plaintiff states "yes"

(9)    Did the Bank keep records? Plaintiff states - "he does not know" The Bank has refused to answer that question.

(10)   Should the courts force Plaintiff to pay on a fraudulent note? Plaintiff states "no"

### CAUSES OF ACTION

CERTIFIED COPY

Plaintiff has causes of action in fraud, breach of contract, breach of fiduciary duty, extortion and under the RICO statutes.

## PRAYER

Plaintiff respectfully requests the court deny Defendant's **MOTION FOR SUMMARY JUDGMENT in** that there exist numerous fact issues for a trial of fact and such issues preclude as a matter of law Summary Judgment.

Wherefore, Plaintiff respectfully requests the court to enter in an Order denying the **MOTION FOR SUMMARY JUDGMENT MOTION** filed by Defendant, J. Rolando Olvera, **Jr**

Respectfully Submitted,

John Ocie Roberts
1726 Commerce
Harlingen, Texas 78550

A TRUE COPY OF THE ORIGINAL
I CERTIFY, THIS _____ DAY OF
_____ , 20__

GILBERT LOZANO, DISTRICT CLERK
WILLACY COUNTY TEXAS
BY _____ DEPUTY

AFFIDAVIT



STATE OF TEXAS
COUNTY OF WILLACY

CAUSE 97223

BEFORE ME PERSONALLY APPEARED
JOHN OCIE ROBERTS WHO UNDER OATH
STATED THE FOLLOWING TO BE TRUE ~~AND~~
CORRECT FROM HIS OWN PERSONAL KNOWLEDGE.
MY NAME IS JOHN OCIE ROBERTS
I AM OVER THE AGE OF 21 AND HAVE
NEVER BEEN CONVICTED OF ANY CRIME.
ON OCTOBER 5, 2000 I WAS FINALLY
ABLE TO GET THE BANK TO RELEASE A
LIEN. THE LOAN WAS MADE BY MRS ANN
LANGHAM. SHE USED THAT MONEY TO
PAY ON MY LOAN.
HOWEVER, THE BANK DOES NOT SHOW
ANY ACCOUNTING ON THAT LOAN PAYMENT
OR ON HER LOAN ITSELF.
ALSO, THE BANK OFFICERS INFORMED
ME THAT THERE WAS NO RECORD OF ANY
USE OF THAT MONEY COMMING FROM THE
LOAN. THE SETTLEMENT SHEET SHOWS THAT
THE BANK RECEIVED THE MONEY, HOWEVER,
THEY HAVE NO CHECK FROM THE ATTORNEY.
TRUST ACCOUNT TO SHOW THAT THEY

**CERTIFIED COPY**

RECEIVED THE MONEY. (ATTACHMENTS ARE INCORPORATED BY REFERENCE AS IF FULLY COPIED HEREIN)

BANK OFFICER, ARLETTE COLE, INFORMED ME THAT I HAD MORE INFORMATION IN MY HAND THAN THE BANK HAD ON FILE.

AFFIANT FURTHER SAITH NAUGHT.

_John Ocie Roberts_
JOHN OCIE ROBERTS

SWORN AND SUBSCRIBE to before me on this the 6th day of October 2000, A.D.

_Leonor Hilda Ramirez_
Notary Public, in and for the State of Texas

LEONOR HILDA RAMIREZ
Printed Name of Notary Public

My Commission expires: 10/15/200

I CERTIFY THAT I HAND DELIVERED A COPY OF THIS AFFIDAVIT ON 6TH DAY OF OCTOBER, 2000 TO J. ROLANDO OLVERA

A TRUE COPY OF THE ORIGINAL
I CERTIFY, THIS 25th DAY OF
June 20__ _John Ocie Roberts_

GILBERT LOZANO, DISTRICT CLERK
WILLACY COUNTY TEXAS
BY _Ruben Cano_ DEPUTY

**CERTIFIED COPY**

**STATE OF TEXAS§**
**COUNTY OF CAMERON§**

Before me personally appeared Dena Fay Langham, who under oath stated the following to be true and correct from her own personal knowledge.

My name is Dena Fay Langham. I am over the age of 21 and have never been convicted of any crime. I am competent to make the affidavit.

On September 26, 1995 I borrowed $14,000.00 in my name on two pieces of property in Willacy County. The $14,000.00 was signed over to the First Valley Bank with instructions to be applied on John Ocie Roberts' bank note for the principle. To my knowledge the payment was never made on that bank note. This note for $14,000.00 is now paid in full.

Affiant further saith naught.

_Dena Fay Langham_
Dena Fay Langham

SUBSCRIBED AND SWORN TO BEFORE ME on 17th of Sept. , 2000, to certify which witness my hand and official seal.

JULIE A. BARNETT
Notary Public, State of Texas
My Commission Expires
December 23, 2002

_Julie A. Barnett_
Notary Public

_Julie A. Barnett_
Typed Name

Notary Public in and for Cameron County, Texas.

A TRUE COPY OF THE ORIGINAL
I CERTIFY THIS ____25____ DAY OF
____June____ , 20 04

GILBERT LOZANO, DISTRICT CLERK
WILLACY COUNTY TEXAS
BY _____ DEPUTY

**CERTIFIED COPY**

Ann Langham
P.O. Box 157
La Feria, Texas 78539

First Valley Bank
203 N Arroyo Blvd.
Los Fresnos, Texas 78566

On October 18, 1995, I borrowed $10,800.00 from your bank. Lots fourteen (14) and fifteen (15) out of the John Roberts subdivision in Raymondville, Willacy County, Texas secured the note. Payments were made of $239.78 each month until December 23, 1998. At that time, I paid the note off with check no. 138 for the amount of $4,916.39.

During the last two- (2) years, I have tried many times to get a release and a clear title.

I demand that you produce my original note signed by me in ink.

I demand that you get me a release of lien and any other documents I will need to obtain a clear title.

I demand to know where the funds from this note were applied and the date they were recorded.

I demand to know if the funds were applied to the debts of John Roberts and the date they were recorded.

I was damaged by the loss of sale of lot 15 to FHA for $7,000.00 because of the unlawful lien that you continue to hold on my property.

If I do not get a response within 5 days, I will report this fraud to the proper authorities. I also will seek judicial intervention if I am not satisfied with your reply.

Sincerely Yours,

Ann Langham
956-797-3020

A TRUE COPY OF THE ORIGINAL
I CERTIFY, THIS ____25____ DAY OF
____June____, 20 _04_

GILBERT LOZANO. DISTRICT CLERK
WILLACY COUNTY TEXAS

**CERTIFIED COPY**     BY _____ DEPUTY