

United States District Court
Southern District of Texas
FILED

JUN 2 8 2004

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOHN OCIE ROBERTS | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. B-04-002 |
| WELLS FARGO BANK, FORMERLY | § | |
| FIRST VALLEY BANK, FORMERLY | § | |
| RAYMONDVILLE STATE BANK, | § | |
| AND TOM FLEMING | § | |

## PLAINTIFF'S SUPPLEMENT IN REPLY OF DEFENDANT WELLS FARGO BANK TO PLAINTIFF'S RESPONSE TO DEFENDANT WELLS FARGO BANK'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, John Ocie Roberts and files this his Plaintiff's Supplement in Reply of Defendant Wells Fargo Bank to Plaintiff's Response to Defendant Wells Fargo Bank's Motion for Summary Judgment and would show the Court the following:

I.
INTRODUCTION

1.01 Plaintiff received Defendant Wells Fargo's Reply with less ten (10) days of days to work on this supplement.

1.02 Plaintiff incorporates by reference all live pleadings, responses, replies and exhibits in this pleadings as if they were all copied herein.

Also, Plaintiff incorporates by reference the responses replies, and all live pleadings to all Defendants into the documents. It is Plaintiff's intent to have the Court read all that he has proffered to be read as one unit, one complementing the others for a common goal and in the interest of justice.

II.

2.01 Defendant Wells Fargo reiterates its basis for their motion for summary judgment being res judicata or claim preclusion under Texas law. It is most unfortunate that Defendant has not captured the matter relevant to the various issues.

2.011 Rule 8 of the Federal Rules of Civil Procedure requires that res judicata be affirmatively plead. When a Defendant moves for summary judgment on an affirmative defense. The burden is on Defendants to establish all of the elements as a matter of law. (<u>Wagner v. Texas A. & M</u>., 939 f. Supp. 1297 (S.D. Tex-1996) No where in there a final judgment which litigated any issue other than the $50,000.00.

2.012 Plaintiff asked the trial Court to have the Bank be shown where and when Plaintiff paid the Bank $50,000.00 but the trial Court said, "No." Impliedly, the trial Court said to Plaintiff, you can not do anything the Bank and whoever was in concert with the bank. The Bank then kept the $50,000.00 extra, and now another Bank, who more than likely never put in a penny into the deal is now allegedly keeping the property. The new Defendant Bank bought off all the notes of the original Bank.

2.013 Defendant's motion for summary judgment has quoted some case numbers, but has stated no specific issues to a jury, or findings of fact of a Court. Defendant expects this Court to surmise, that if there is a cause number, there must been a issue somewhere on the homestead issue.

2.02 The homestead issue: The most significant problem Plaintiff was forced with was the Defendant Bank's failure to locate its records. The initial real estate note was lost; as unusual as it may seem, but true.

Therefore, as best as can be described by Plaintiff, the only thing left was an oral contract.

2.03 As may be seen, the real estate note was signed on October 1, 1990. As may be seen, the designation as shown by Defendant's exhibits (Exhibit A copy of Defendant's exhibit and as shown by Defendant's exhibits is incorporated by reference as if fully copied herein.) The designation of homestead was signed, according to the notary public, October 5, 1990. Therefore, one can not say the Defendant Bank relied on the designation of homestead if there was none when the loan was made.

2.04 The bank has a legal duty to follow the Texas Property Code on foreclosures. The Defendant Bank never did follow the deed of trust agreement either.

2.05 In that Plaintiff decided to begin his homestead on one of the properties, said property became his homestead. The Constitution of the State of Texas allows for foreclosure but not executions on homestead.

2.06 Even Defendant Fleming know that (See Exhibit B the original of the hearing or motion for continuance and hearing on application for injunctive relief, case No. 2003-12-5738-A page 5l. 19-22 and is incorporated by reference as if fully copied herein.) As he cogently stated on page 5, lines 19-22, "of course, anybody who's been around more than 15 minutes in the practice of law knows the sheriff doesn't handle deeds of trusts and foreclosures."

2.07 However, that is exactly what Defendant has one on the homestead. Defendants did in directly what no one is to do directly. The sheriff executed on a foreclosure and executed on a homestead.

That is unequal protection and the Constitution of the United States of America does not allow it.

2.08 Defendant Bank has directly participated in that it is quit claiming to a taxing unit for a foreclosure that was allegedly done to one of Plaintiff's properties.

2.09 The Bank is having the Sheriff violate Texas Civil Practice and Remedies

Code §34.042 in that it is having the Sheriff execute all properties together when the statutes requires they be sold separately.

2.10 Also, §34.047 requires payment for the sale of properties and also §34.0445. Such has not been done.

2.11 The issue of homestead did not come into play until the execution came to pass. Up to then, there has never been any litigation of any type that considered would have considered this issue.

2.12 Defendant Bank speaks of bankruptcy as it were illegal. It is not illegal therefore and the mere fact that Plaintiff went through some bankruptcies does not give Defendant Bank to have Plaintiff's property seized pursuant to a writ of execution.

2.13 Res judicata requires proof of the following elements: (1) a prior final judgment on the merits by a Court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. (Lewis v. Guerrero, 978 S.W. 2d 689, Tex. Civ. App.-Corpus Christi, 1998).

2.14 The only issue was the $50,000.00 that could not be litigated as litigated in the first action. (The Defendants have continually left out the Response to Defendant's motion for summary judgment. (Exhibit C is a true and correct copy of the responses to Defendants' motions for summary judgment and the affidavits, and are incorporated by reference as if fully copied herein.)

2.15 However, the case at bar is not the issue of whether Plaintiff paid or not pay the $50,000.00; the issue here is did Defendants violate any of Plaintiff's constitutional rights when they took that $50,000.00 and did not apply it to his loan account. In other words, did Defendants go through a fair trial, with the motion of substantial justice and fair play?

2.16 If most of the events which give rise to a cause of action did not occur until

after the 1997 case, how could it be res judicata. The manner the sheriff and judgment act is ministerial not discretionary. How can Plaintiff comprehend that he should have added the issue of a judge going into another judge's Court and undo the elected judges orders?

3.01 Plaintiff objects to the quitclaim deed in that the signatory shows no authority to have signed such document.

Wherefore, Plaintiff prays that Defendants' motions for summary judgment be denied.

Plaintiff prays for any other relief, at law on in equity for which he is entitled to receive.

Respectfully submitted,

/John Ocie Roberts
P. O. Box 1167
La Feria, Texas 78559

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document and has had been hand delivered on this the 25 day of June, 2004 to the opposing counsel.

John Ocie Roberts

vo. 1325 ... 222     27464

OFFICIAL RECORDS

| | |
|---|---|
| THE STATE OF TEXAS | § |
| COUNTY OF WILLACY | § |

KNOW ALL MEN BY THESE PRESENTS:

HOMESTEAD DESIGNATION

That we, JOHN ROBERTS and THELMA ROBERTS, husband and wife, of the County of Willacy, and the State of Texas, do hereby, under and by virtue of the constitution and laws of the State of Texas in such cases made and provided designate and set apart as our homestead the following described land situated in Willacy County, Texas, to-wit:

> A tract 100 feet by 200 feet out of Lot Number 12, Section Number 47, Gulf Coast Irrigation Company Subdivision, and described by metes and bounds as follows, to-wit:
> BEGINNING at a point on the west line of said Lot 12, Section 47 of the Gulf Coast Irrigation Company Subdivision, which point is 425 feet South of the Northwest corner of said Lot 12;
> THENCE East and parallel with the North line of said Lot 12, a distance of 200 feet to a point for the Northeast corner of this tract;
> THENCE South and parallel with the west line of said Lot 12, a distance of 100 feet to a point for the Southeast corner of this tract;
> THENCE West and parallel with the north line of said Lot 12, a distance of 200 feet to a point in the West line of said Lot 12, such point being the Southwest corner of this tract;
> THENCE North with and along the west line of said Lot 12, a distance of 100 feet to the place of beginning of this tract, this tract containing 0.459 acre of land, more or less.

This designation of homestead is made for the purpose of inducing the Raymondville State Bank to make a loan to John Roberts on other land owned by me in Cameron County, Texas, more particularly described as:

> TRACT 1: The West six and 22/100 (W. 6.22) acres of the East Twenty-one and 224/1000 (E. 21.224) acres of Block One (1), in Orange Grove Park Subdivision, La Feria Grant, according to the map or plat of said subdivision recorded in Volume 4, Page 11, of the Map Records of Cameron County, Texas, and further described as follows:
>
> COMMENCING at a point in the North line of U.S. Highway "83" Business and the south line of the Missouri-Pacific Railway right of way, said point being the Northeast corner of Block 1, ORANGE GROVE PARK SUBDIVISION, as shown on map thereof, recorded in Volume 4, Page 11, of the Map Records, Cameron County, Texas;
> THENCE, along the north line of said U.S. Highway "83" with the South line of the Missouri-Pacific right of way, and the north line of said Block 1, South 71° 31' West, a distance of 585.78 feet to the point of beginning of the parcel herein described;
> THENCE, Parallel with the east line of said Block 1, South 01° 27' East, a distance of 62.75 feet to a point in the South right of way line of said Business "83", and continuing, South 01° 27' East, a distance of 1014.98 feet, for a total distance of 1077.73 feet to a point in the south line of said Block 1, lying on the approximate south bank of a drain ditch;
> THENCE, along the south line of said Block 1, South 89° 00' West, a distance of 261.37 feet to a point;

WFBank's EXHIBIT NO. "1"

Exh A

vo. 1325 ac 223

THENCE, parallel with the east line of said Block One (1), North 01° 27' West, a distance of 932.85 feet to a point in the south line of said Business "83" right of way, and continuing, North 01° 27' West, a distance of 62.75 feet for a total distance of 995.60 feet to a point in the North line of said Block 1, being the north line of said Highway "83" right of way, and the South line of the Missouri Pacific Railroad right of way;

THENCE, along the north line of said block 1, with the north line of said Highway right of way and the South line of said Missouri Pacific right of way, North 71° 31' East, a distance of 273.35 feet to the POINT OF BEGINNING.

TRACT 2: An 8,750.00 square foot tract of land, being the Easterly 50.0 feet of Lots Numbers Twelve (12), Thirteen (13), Fourteen (14) and the Easterly 50 feet of the Northerly 1/2 of Lot Number Eleven (11), Block Number Sixteen (16), THIRD ADDITION to the City of San Benito, according to the map recorded in Volume 2, Page 5, of the Map Records of Cameron County, Texas, more fully described as follows:

Having a point of beginning at the intersection of Texas State Highway Loop 448 and Westerly right of way line of Austin Street and THENCE South 30 degrees 43 minutes West, 175.0 feet, along with the Westerly right of way line of Austin Street to a point;

THENCE, North 59 degrees 17 minutes West, 50.0 feet to a point;

THENCE, North 30 degrees 43 minutes East, 175.0 feet to a point on the Southerly right of way line of said Texas State Highway Loop 448;

THENCE, along with the Southerly right of way line of Texas State Highway Loop 448, South 59 degrees 17 minutes East, 50.0 feet to the POINT OF BEGINNING of the tract herein described.

WITNESS OUR HANDS this the ___1st___ day of October, 1990.

_____
(JOHN ROBERTS)

_____
(THELMA ROBERTS)

THE STATE OF TEXAS    §

COUNTY OF WILLACY    §

This instrument was acknowledged before me on this the ___5th___ day of October, 1990, by John Roberts.

_____
Notary Public in and for the State of Texas.
My Commission Expires: __3/8/93__

Michelle Olivarez
Notary's Printed Name