

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
—BROWNSVILLE DIVISION—

United States District Court
Southern District of Texas
ENTERED

JUL 2 6 2004

Michael N. Milby, Clerk of Court
By Deputy Clerk _D. Ahumada_

| | | |
|---|---|---|
| JOHN OCIE ROBERTS, | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-04-002 |
| | § | |
| WELLS FARGO BANK ET AL., | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending are the Defendants' respective motions for summary judgment.[1] Docket Nos. 20-22, 31. Ample additional briefing has been submitted on all of the relevant matters by the parties. Docket Nos. 25-28, 30, 32-33, 35-37, 39. Oral argument was heard on June 28, 2004. Docket No. 38. Having duly considered all of the foregoing, the Court hereby **GRANTS** summary judgment in favor of all three Defendants for the reasons set forth below.

**I.   BACKGROUND**

Plaintiff's pro se complaint was filed in this Court on January 2, 2004. Docket No. 1. In it he alleges that Defendants Wells Fargo Bank ("Bank"), Tom Fleming, and Dan Huerta transgressed his civil rights in violation of 42 U.S.C. §§ 1981, 1983, 1985 and various constitutional amendments. Id. The precise nature of the alleged violations is often unclear;[2] however, the Plaintiff's allegations all stem from the Bank's foreclosure on land after Plaintiff defaulted on a note. Id. Fleming is alleged to have violated the Plaintiff's rights in his capacity as counsel for the Bank, and Huerta is alleged to

---

[1] Defendant Dan Huerta's motion is actually styled as a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6). However, on June 1, 2004, the undersigned provided the parties with notice in open court that Defendant Huerta's motion would be construed as a motion for summary judgment under FED. R. CIV. P. 56. Docket No. 29; see Judwin Props., Inc. v. U.S. Fire Ins. Co., 973 F.2d 432, 436 (5th Cir. 1992) ("A district court may grant a motion for summary judgment sua sponte, provided that it gives proper notice to the adverse party.").

[2] The Court has, however, afforded Plaintiff's initial pleading and subsequent filings the most sympathetic construction that their contents will bear. S.E.C. v. AMX Int'l, Inc., 7 F.3d 71, 75 (5th Cir. 1993) (pro se documents to be more liberally construed than those drafted by attorneys).

have done so in his capacity as the Cameron County Deputy Sheriff who executed the foreclosure sale on Plaintiff's property. Id.

The instant lawsuit is not the first case generated by the Plaintiff's default on the note and the Bank's subsequent foreclosure. Prior litigation involving some of the same parties has taken place in both state and federal court. These related legal proceedings are detailed below.

On May 30, 1997, the Plaintiff filed a lawsuit in the 138th Judicial District Court of Willacy County, Texas, alleging breach of contract and fraud against the Bank and multiple other defendants not named in the instant suit. Docket No. 22 at Exhibit 4 (original state court petition). The defendants in that suit were granted summary judgment on November 9, 2000. Id. at Exhibit 1. The Texas appellate courts subsequently affirmed the trial court's decision. Roberts v. First Valley Bank, No. 13-01-00207-CV, 2003 WL 21283154 (Tex. App.—Corpus Christi June 5, 2003, pet. denied); see also Docket No. 21 at Exhibit C (October 3, 2003 denial of petition for review); Docket No. 22 at Exhibit 3 (December 5, 2003 denial of motion for rehearing of petition for review).

On October 27, 2003, Defendant Huerta, in his capacity as Deputy Sheriff, executed a writ of execution stemming from the state court judgment on Plaintiff's real property. See Docket No. 31 ("Verification"). After notice, the property was sold on January 6, 2004. Id. Although the writ was executed prior to the Supreme Court of Texas's December 5, 2003 denial of the motion for rehearing, there is nothing in the record that suggests that the enforceability of the judgment was suspended in the interim. See generally TEX. R. APP. P. 24.1 ("Suspension of Enforcement").

Prior to their final resolution in state court, these matters also trickled into federal court. On December 1, 1997, while the prior lawsuit was pending in the state district court, the Plaintiff also filed a cryptic complaint in federal court against Defendant Fleming and the other members of his law firm, alleging various violations of his constitutional rights.[3] Docket No. 21 at Exhibit F. At that time, Plaintiff was also a debtor in a pending action in the Southern District of Texas's Bankruptcy Court, and his constitutional lawsuit was apparently consolidated with the pending bankruptcy matter due to the interrelation between the underlying facts and parties in each suit. On April 3, 2001, the Bankruptcy Court dismissed the Plaintiff's constitutional claims with prejudice under FED. R. CIV. P.

---

[3] A very similar document was also filed in the 138th Judicial District Court of Willacy County on October 14, 1997 as part of the same lawsuit in which the Plaintiff was alleging breach of contract and fraud. Docket No. 22 at Exhibit 5.

2

12(b)(6). Docket No. 21 at Exhibit G.

As previously noted, the instant suit was filed on January 2, 2004.[4] Docket No. 1. The Bank and Fleming originally moved to dismiss Plaintiff's complaint under Fed. R. Civ. P. 12(b) on January 9, 2004. Docket No. 6. Having received no response, the Court granted same on February 10, 2004. Docket No. 7; see LOCAL RULE 7.4 ("Failure to respond will be taken as a representation of no opposition."). However, on April 5, 2004, the undersigned granted Plaintiff's motion to reinstate his case in open court. Docket Nos. 8, 14. All three Defendants have filed motions seeking summary judgment that are now ripe for adjudication.

## II.   SUMMARY JUDGMENT

### A.   Standard of Review

Summary judgment is appropriate when it is apparent from the record that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Summary adjudication of this nature is only proper "if no reasonable jury could differ in weighing the evidence." Vulcan Materials Co. v. City of Tehuacana, 369 F.3d 882, 886 (5th Cir. 2004). In the context of a summary judgment motion, courts must examine the evidence "in the light most favorable to the nonmoving party." Id.; see also Baker v. Metro. Life Ins. Co., 364 F.3d 624, 627 (5th Cir. 2004) (noting that inferences drawn from the evidence are also viewed in light favorable to nonmoving party). The moving party bears the initial burden to demonstrate the absence of a bona fide issue of material fact. Norman v. Apache Corp., 19 F.3d 1017, 1023 (5th Cir. 2003). Once the moving party has done so, however, the nonmoving party "must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." Templet v. HydroChem Inc., 367 F.3d 473, 477 (5th Cir. 2004).

---

[4] Two additional cases were contemporaneously filed by the Plaintiff in state court seeking to enjoin the sale of Plaintiff's real property that eventually occurred on January 6, 2004. Both cases were filed in Cameron County and were styled Roberts v. Wells Fargo Bank et al. (Case Nos. 2003-12-5738-A and 2004-01-0003-B). These cases have been consolidated and, perhaps, remain pending in one form or another. Docket No. 20 at 3-4; but cf. Docket No. 28 at Exhibit K-2 (April 5, 2004 state court order declaring Plaintiff to be a "vexatious litigant" under Texas law).

### B. The Plaintiff's Complaint

The Plaintiff's allegations concerning the Bank all seem to turn on the contention that the note and the debt that it memorialized were invalid. Docket No. 1 at ¶¶ 5-9, 30; Docket No. 8 at ¶ 15. Consequently, the judgment and foreclosure are likewise alleged to be invalid. The Plaintiff's allegations concerning Fleming are to the effect that he has improperly wielded his influence as a member of the bar, has interfered with the Plaintiff's right to counsel, has subjected the Plaintiff himself to threats and harassment, and has improperly sought to enforce a judgment before it became final. Docket No. 1 at ¶¶ 10-15, 24; Docket No. 8 at ¶ 3. Finally, the Plaintiff alleges that Huerta acted illegally in executing the writ issued that led to the foreclosure sale. Docket No. 1 at ¶¶ 16-23, 33-34; Docket No. 8 at ¶ 9. All of the foregoing conduct is generally characterized as being in violation of various provisions of the United States Constitution. Docket No. 1 at ¶¶ 4, 31; Docket No. 8 at ¶¶ 2, 8.

### C. The Defendants' Motions

The Bank requests summary judgment on the basis of claims preclusion. Docket No. 22 at 6-8. Citing United States ex rel. Laird v. Lockheed Martin Eng'g and Sci. Servs. Co., 336 F.3d 346, 357 (5th Cir. 2003), it argues that the Plaintiff is both precluded from relitigating issues resolved in the state lawsuit and litigating issues that could and should have been litigated in that proceeding. Docket No. 22 at 6-8; see also Amstadt v. United States Brass Corp., 919 S.W.2d 644, 652 (Tex. 1996) (setting forth elements of claims preclusion defense as "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; (3) a second action based on the same claims as were raised or could have been raised in the first action"); Barr v. Resolution Trust Corp., 837 S.W.2d 627, 628 (Tex. 1992) ("Res judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as matters that, with the use of diligence should have been litigated in the prior suit.").

Fleming requests summary judgment on the basis of attorney immunity Docket No. 20 at 4-10. Citing Renfroe v. Jones & Assocs., 947 S.W.2d 285, 287-88 (Tex. App.—Fort Worth 1997, writ denied), and other cases, Fleming maintains that he cannot be liable to the Plaintiff for acts undertaken in his capacity as lawyer for the Bank. Docket No. 20 at 4-10; see also Guthrie v. Buckley, 246 F.

4

Supp. 2d 589, 590-91 (E.D. Tex. 2003) (determining in diversity case that suit premised on representation of another party in course of litigation was barred under Texas law), aff'd, 2003 WL 22455394 (5th Cir. Oct. 29, 2003) (per curiam); Lewis v. Am. Exploration Co., 4 F. Supp. 2d 673, 676-80 (S.D. Tex. 1998) (holding in diversity action that Texas law immunizes attorneys from suit for conduct on behalf of client in the course of litigation); Taco Bell Corp. v. Bracken, 939 F. Supp. 528, 531-33 (N.D. Tex. 1996) (interpreting Texas law in diversity action to preclude suit against attorneys for conduct carried out in the capacity as opposing counsel in litigation).

Among other things, Huerta requests judgment as a matter of law on the basis of absolute or qualified immunity. Docket No. 31 at 6-10. He cites Mays v. Sudderth, 97 F.3d 107, 110-14 (5th Cir. 1996), and other cases, for this proposition. Docket No. 31 at 6-10. More particularly, Huerta argues that, as a law enforcement officer, he is immune from suit premised on his execution of a facially valid writ of execution issued pursuant to a final judgment by a court of competent jurisdiction. Id.; see also In re Foust, 310 F.3d 849, 855 (5th Cir. 2002) ("Law enforcement officers have absolute immunity for enforcing the terms of a court order but only qualified immunity for the manner in which they choose to enforce it."); Hart v. O'Brien, 127 F.3d 424, 445 & n.10, 447 (5th Cir. 1997) (observing that law enforcement officers are entitled to absolute or qualified immunity for executing a facially valid warrant issued by a court of competent jurisdiction), cert. denied, 525 U.S. 1103 (1999);[5] Turner v. Raynes, 611 F.2d 92, 93 (5th Cir. 1980) (holding that sheriff enjoyed qualified immunity when "he did no more than execute an arrest warrant valid and regular on its face" despite fact that crime charged turned out to be nonexistent), cert. denied, 449 U.S. 900 (1980).

### D.     Analysis

The Plaintiff has filed multiple responses to the Defendants' motions for summary judgment, and the Defendants have filed multiple replies. Docket Nos. 25-28, 30, 32-37, 39. However, none of these filings truly alters the nature of the allegations against the Defendants or their respective defenses. Having reviewed each and every pertinent filing, the Court is of the opinion that no genuine issue of material fact remains for resolution at trial and all three Defendants are entitled to judgment as a matter of law.

---

[5] Hart has been abrogated on entirely different grounds. See Kalina v. Fletcher, 522 U.S. 118 (1997).

Although the Plaintiff does complain of some acts committed after the conclusion of the state lawsuit that ultimately led to the aforementioned foreclosure on his real property, see, e.g., Docket No. 25 at 5 ("The following are the facts on which this lawsuit is based and all have occurred after the state lawsuit . . . ."), it is clear that all of his allegations concerning the Bank turn on the validity of the underlying note and state court judgment. See, e.g., Docket No. 25 at Exhibit D (Plaintiff's "Affidavit"); Docket No. 28 at 1-2; Docket No. 33 at ¶¶ 1-3; Docket No. 36 at 2-4. While the Court is not unsympathetic to the Plaintiff's loss of his property, the proper forum for raising arguments concerning this matter was the state court proceeding. The allegations leveled against the Bank in this suit were, in fact, raised and addressed by the Bank and the Plaintiff and resolved in the former's favor in the state lawsuit. This resolution was affirmed by the highest state court. As per Laird, Amstadt, and Barr, any constitutional issues bearing on the validity of the note or the legal process by which the Bank was attempting to obtain a judgment thereon could and should have been raised in the state suit. Moreover, to the extent that the Plaintiff's various filings with this Court may be read as an attack on the constitutionality of the state court judgment and the proceedings that produced it, see, e.g., Docket No. 27 at 4 ("The trial court ignores all of Plaintiff's affidavits. The appeals court and the Supreme Court certified such actions."), this Court has no jurisdiction to entertain such claims. See Howell v. Supreme Court of Texas, 885 F.2d 308, 311 (5th Cir. 1989) ("Federal district courts have no authority to review the final determinations of a state court. Review of such determinations is only available in the United States Supreme Court on direct appeal or by writ of certiorari."), cert. denied, 496 U.S. 936 (1990).

Review of the record renders it equally clear that the allegations against Fleming all stem from the legal services he provided to the Bank during the course of litigation. Although Plaintiff depicts Fleming's conduct as extralegal harassment, the evidence in the record is to the contrary. See, e.g., Docket No. 21 at Exhibit E ("Affidavit of Tom Fleming"); Docket No. 25 at Exhibit A (various correspondence from Fleming to state court judges and an attorney who formerly represented Plaintiff). As per Renfroe, Guthrie, Lewis, and Bracken, there can be no doubt that attorneys generally enjoy immunity for acts taken in the course of representing their clients in litigation.

As the Plaintiff correctly notes, Docket No. 26 at 6, there are exceptions to the rule that attorneys are immune for litigation related representational conduct. See, e.g., Toles v. Toles, 113 S.W.3d 899, 911-13 (Tex. App.—Dallas 2003, no pet. h.) (recognizing exception for fraud or

6

conspiracy to defraud but not for constructive fraud); Mendoza v. Fleming, 41 S.W.3d 781, 787-88 (Tex. App.—Corpus Christi 2001, no pet. h.) (recognizing exception for certain types of malicious conduct). The Plaintiff frames his allegations so as to fall within these exceptions. See, e.g., Docket No. 26 at 6. However, even favorably construed, the summary judgment evidence lends no support to these allegations. Mere allegations alone are insufficient to avoid summary judgment. See Freeman v. Texas Dept. of Criminal Justice, 369 F.3d 854, 860 (5th Cir. 2004) (noting that nonmoving parties cannot satisfy their burden "with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence").

The summary judgment evidence in the record that Plaintiff relies on primarily consists of legal correspondence between Fleming and others. Docket No. 25 at Exhibit A. However, the content of these letters, as well as Fleming's surrounding actions, clearly fall within the scope of conduct protected by the attorney immunity doctrine. There is "no right of recovery against the opposing attorney for that attorney's having made certain motions." White v. Bayless, 32 S.W.3d 271, 276 (Tex. App.—San Antonio 2000, pet denied). Nor generally may "[c]ommunications made in connection with and related to judicial proceedings . . . serve as the basis of a civil action." IBP, Inc. v. Klumpe, 101 S.W.3d 461, (Tex. App.—Amarillo 2001, pet denied). Zealous representation is likewise no basis for a cause of action. See Chapman Children's Trust v. Porter & Hedges, 32 S.W.3d 429, 439-43 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (rejecting claim against opposing attorney premised on "threatening to take legal action" against opposing counsel and party and accusing latter of wrongful conduct). Fleming's documented conduct does not transgress these boundaries.

In one notable case, a federal district court did reject a lawyer's claim of attorney immunity involving a writ of execution. See Miller v. Stonehenge/FASA–Texas, JDC, L.P., 993 F. Supp. 461, 464-65 (N.D. Tex. 1998). But, in Miller, counsel's immunity defense failed because the suit stemmed from the lawyer's actual participation in the execution of the writ by United States Marshals. Id. at 465. That is, the lawyer was not being sued for her rendition of legal services. See id. ("Collier may have been present as a representative of her client, but her skills as an attorney had no role in the events that transpired.") (emphasis in original). In the instant case, however, Fleming is being sued in his capacity as a professional for assisting his client to obtain a judgment via legal proceedings that ultimately led to the issuance of a writ of execution. The fact that Plaintiff casts his complaints

against Fleming as being constitutional in dimension does not make the conduct at issue any more actionable under these circumstances.

Finally, the evidence in the record leaves no doubt that Huerta is entitled to absolute immunity. The evidence is clear that Huerta was acting on a facially valid writ issued pursuant to a final judgment of a court of competent jurisdiction. Docket No. 28 at Exhibit J (December 8, 2003 state court hearing testimony of Huerta at pages 8-13); Docket No. 31 ("Verification"). As such, the principals announced in Sudderth, Foust, Hart, and Turner render Huerta immune from liability for his role in the execution of the writ and related conduct.

The Plaintiff lodges two principal arguments to the contrary. First, Plaintiff maintains that the judgment was not, in fact, final. Docket No. 1 at ¶ 15. This allegation appears to be premised on the fact that his petition for rehearing in the Supreme Court of Texas remained pending on the date that the writ of execution was originally issued. Docket No. 25 at 1; Docket No. 37 at 2-3, 8. However, as the Supreme Court of Texas had denied his petition for review and Plaintiff did not act in conformity with TEX. R. APP. P. 24.1 to suspend the enforcement of the judgment, his petition for rehearing in no way affected the otherwise final judgment's enforceability. See, e.g., Smith v. Texas Farmers Ins. Co., 82 S.W.3d 580, 585 (Tex. App.—San Antonio 2002, pet denied) ("[E]ven though an appeal may be pending, a judgment is final in the sense that execution will issue in the absence of a supersedeas bond.").

Second, Plaintiff also argues that Huerta had reason to know that the writ of execution was not valid due to two temporary restraining orders that were issued by the state court on December 1, 2003 and January 5, 2004 respectively. Docket No. 27 at 2; Docket No. 37 at 5. However, Plaintiff flatly acknowledges the any temporary restraining orders were also subsequently dissolved on that latter date (i.e., January 5, 2004) as well. Docket No. 28 at Exhibit C ("Order Dissolving Restraining Order"); id. at Exhibit D ("Order Dissolving Temporary Restraining Order and Denying Temporary Injunction"). As the real property at issue was not sold until January 6, 2004, Docket No. 31 ("Verification"), the restraining orders are of no relevance to Huerta's conduct. Moreover, as the restraining orders at issue were set aside and sanctions were levied against Plaintiff concerning same, Docket No. 28 at Exhibit D, they constitute no evidence of invalidity concerning the writ of execution.

## III. CONCLUSION

Finding that there is no genuine issue of material fact remaining for resolution at trial, the Court hereby **GRANTS** summary judgment in favor of Defendants Wells Fargo Bank, Tom Fleming, and Dan Huerta on the aforementioned grounds for the aforesaid reasons.

Signed in Brownsville, Texas, this 26th day of July, 2004.

_____
ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE
